### John A. Perkins, Administrator, v. Louisa Perkins.

1. HOMESTEAD—*by what law right of, determined.* The homestead rights of a surviving spouse are determined by the law in force at the death of the other.

2. HOMESTEAD ESTATE—*when should not contribute to payment of mortgage debt.* Where real estate is sold for the purpose of paying the debts of a decedent, no portion of the mortgage debt outstanding against the same should be charged against the widow's homestead estate where the proceeds of the sale were sufficient to discharge the debt without resorting to the homestead estate, notwithstanding the widow had joined in the mortgage for the purpose of releasing her homestead.

3. DOWER—*extent of widow's, in homestead premises.* Where a widow is entitled to a homestead estate, she is entitled to dower in the proceeds of the sale of the premises in question only to the extent of one-third of that which remains after deducting the value of the homestead interest.

Petition in court of probate for leave to sell real estate to pay debts. Appeal from the Circuit Court of Effingham County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

R. C. HARRAH, for appellant.

No appearance for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a petition in the County Court of Effingham County, by appellant for an order authorizing him to sell the lands of his intestate to pay debts of the estate. He

was not satisfied with the finding and order of that court as to the amount that should be paid to the surviving widow, "as and for homestead and dower," and appealed to the Circuit Court, where it was ordered that he pay her the sum of $595.65, from which he appeals to this court contending that the amount should be but $404.94.

Appellant's intestate died seized of an eighty-acre farm, in Effingham county, Illinois. At the time of his death he resided with appellee, his wife, upon this farm. He left him surviving, appellee, his widow, and certain children and a grandchild, his heirs.

During his lifetime he executed two mortgages, each covering the whole premises, to secure payment of certain indebtedness which he owed the mortgagees. In each of these mortgages appellee joined, and the right of homestead was duly released.

As the administration of the estate progressed it was found necessary to sell this real estate to pay debts, whereupon appellee filed her written assent to have the land sold, disencumbered of her homestead and dower interests, and agreed to accept the value thereof in money, out of the proceeds of the sale; and each of the mortgagees also filed assent to such sale and agreed to accept the amounts due thereon, respectively, to be paid out of such proceeds.

The farm was sold *en masse* for $2,950, and the amounts due to the mortgagees, together with an item for taxes, were paid. These amounts aggregated $1,628.23, leaving a balance of $1,321.77. It is not contended that any part of the indebtedness which the mortgages were given to secure was for purchase price of any part of the farm, and it is conceded that the farm embraced the homestead of the intestate and that appellee as his surviving widow is entitled to have the value of her homestead interest paid her out of this balance. The question is, what under the facts of this case is the value of her homestead interest,—upon what basis shall it be computed? This is the only question in the case.

Counsel for appellant contends that notwithstanding the

fact that the farm sold for $1,321.77, more than enough to pay the mortgage debts, including interest, taxes and costs, the law requires that the widow shall contribute a ratable share to the payment of the mortgage debts; and that such ratable share in all cases, means the proportion in value that her homestead estate bears to the value of the whole estate, and in support of his contention cites the following cases: Selb v. Montague, 102 Ill. 446; Cox v. Garst, 105 Ill. 342; Montague v. Selb, 106 Ill. 49; Selb v. Mabee, 14 Ill. App. 574; Noffts v. Koss, 29 Ill. App., 301; and Zinn v. Hazlett, 67 Ill. App. 410.

An inspection of these cases discloses that in Cox v. Garst and Zinn v. Hazlett, no question as to homestead was involved. These cases involved dower only, and it is not claimed in the case at bar that the Circuit Court did not compute the value of the widow's dower, in effect, in accordance with the rule contended for. The other cases establish, that at the time they arose the law in this State was as is now contended for by counsel, but since that time the statute has been materially amended.

By the Act of June 17, 1887, section 4 of the Homestead Exemption statute was amended by adding thereto the following:

"*Provided*, that in all cases when such release, waiver or conveyance shall be taken by way of mortgage or security, the same shall only be operative as to such specific release, waiver or conveyance; and when the same includes different pieces of land, or the homestead is of greater value than one thousand dollars, said other lands shall first be sold before resorting to the homestead, and in case of the sale of such homestead, if any balance shall remain after the payment of the debt and costs, such balance shall to the extent of one thousand dollars ($1,000) be exempt, and be applied upon such homestead exemption in the manner provided by law."

No case involving the feature of homestead under a similar state of facts as disclosed in the record, here, has been under consideration in either the Supreme or Appellate Courts of this State since the amendment of 1887 went into effect, at least none has been cited. It is true that the

opinion in Noffts v. Koss, *supra,* was filed after the amendment, but the writer of this opinion has examined the original record in that case and finds that the intestate, there, died more than a year before the amendment took effect, and that the suit, there, was commenced months before. The homestead rights of a surviving spouse are determined by the law in force at the death of the other, "any change afterwards made in the law cannot have any bearing on the rights of the parties." Henson v. Moore, 104 Ill. 403 (409). So we conclude that none of the cases cited and relied upon by counsel for appellant, are of controlling force now.

The history of the subject will reflect light upon the purpose and meaning of the amendment.

Prior to the constitution of 1870, the homestead right was a mere exemption. That constitution provides that the "general assembly shall pass liberal homestead and exemption laws." In pursuance of this mandate the general assembly by the Acts of 1871, 1872, 1873 and 1874, raised the homestead right from a mere exemption to the dignity of an estate, and expressly made the estate exempt from the laws of "conveyance, descent, and devise," except as might be thereafter provided, as well as from "attachment, judgment, levy or execution, sale for the payment of debts, or other purposes." During the years 1882, 1883 and 1884, respectively, were promulgated the decisions of the courts relied upon here by counsel for appellant,—the three Selb-Montague-Mabee cases; and thereupon followed the enactment of the amendment of 1887, above quoted. By this amendment it is expressly provided that when a release of homestead has been taken by way of mortgage or security, the same shall only be operative as to such specific release; and that "in case of sale of such homestead, if any balance shall remain after payment of the debt and costs, such balance to the extent of $1,000 shall be exempt and be applied upon such homestead exemption." The decisions relied upon by counsel disclose the *then* state of the law, and doubtless moved the general assembly to enact the amendment.

Counsel's argument and the cases upon which he relies, are based on the assumption that upon the execution of a mortgage on premises including a homestead estate, *eo instanti* the mortgage becomes a fixed, primary encumbrance, *pro rata* upon the homestead interest, without regard to any question as to whether the condition exists which under the Act of 1887 makes a resort to the homestead interest permissible. Such is not now the law as we understand it.

"The homestead laws are remedial and must receive a liberal construction, such as will advance the objects contemplated by the legislature in enacting them."

The purpose and effect of the amendment of 1887, where the release of the homestead is taken by way of mortgage or security, and other than the homestead " piece of land " included in the mortgage, or if there is no other, and the homestead "piece" is worth more than $1,000, is to create only a conditional encumbrance upon the homestead interest. Unless the necessity of resorting to the homestead interest be found to exist the lien does not ultimately attach to the homestead interest, and in such case the rights of all after sale, are determined upon the same basis as if the release had never been " taken."

Where it is found necessary to sacrifice the homestead interest in whole or in part in order to raise a sufficient sum to pay the mortgage debt and costs, then that interest must contribute its ratable share, but under the present state of the statute, where the mortgage debt and costs can be fully paid out of the proceeds of sale of the premises embraced in the mortgage, without resorting to or encroaching upon the homestead interest, then it is the duty of the court to preserve such interest, intact, for the sole benefit of those entitled thereto under the terms of the statute.

In the case at bar, the mortgaged premises sold for $2,950. The aggregate of the mortgage debts and costs was $1,628.23, leaving a balance of $1,321.77. Of this balance there should first be set aside the full sum of $1,000,

to " be applied upon the homestead exemption." When this is done there will remain $321.77 of surplus, *one third* of which should be set aside for the purpose of dower. These two life interests aggregate $1,107.25. The commutation value of these two interests may be ascertained by resorting to the life tables in general use for such purpose. The record shows that the widow was fifty-two years of age.

We feel called upon to make some further comment concerning the widow's dower interest. " The homestead estate must contribute to the dower." The widow " cannot take the homestead and have the equivalent of one-third of the entire estate assigned to her as dower out of the residue, but is endowable of only one-third of the residue, after deducting the homestead." " The widow could not enjoy two life estates in the same premises, and was rightly allowed as only for one." Jones v. Gilbert, 135 Ill. 34; Merritt v. Merritt, 97 Ill. 253. The foregoing is clearly the true rule where the lands are sold and commutation accepted in lieu of homestead and dower, and also where homestead and dower are both assigned the widow cannot have dower in the entire estate while she continues to enjoy the homestead.

The widow's dower interest fully contributes its ratable share to the mortgage encumbrance by limiting her right of dower to the surplus remaining after payment of the mortgage debt and costs. Virgin v. Virgin, 189 Ill. 144.

We find by computation from the life tables in general use in this state that the sum of $595.65, awarded by the Circuit Court as the proper sum to be paid to appellee, " as and for her homestead and dower interests," is not in excess of the sum due her for such interests.

The judgment of the Circuit Court is affirmed.

*Affirmed.*